19562, 19563. TRUST COMPANY OF GEORGIA *et al. v.* MOBLEY, superintendent of banks; and *vice versa.*

Decided October 18, 1929.

*Anderson, Rountree & Crenshaw, Jerome Jones Jr.,* for Trust Company of Georgia.

*O. A. Park, C. N. Davie, Hewlette A. Hall, Hall & Jones,* contra.

BELL, J. (After stating the foregoing facts.)

The plaintiff insists that the judgment of October 11, 1928, which was rendered after the allowance of the plaintiff's amendment, and which, in view of the amendment, revoked the previous order sustaining the defendants' general demurrer, was in legal effect the overruling of the general demurrer, and, being unexcepted to, became the law of the case and should stand as an adjudication that the petition set forth a cause of action. There is no merit in this contention. Under the terms of the previous order the allowance of the amendment in this case ipso facto opened the petition for a fresh adjudication, and the order of revocation was seemingly superfluous and unnecessary. At any rate, a judgment which merely revokes a previous judgment conditionally sustaining a general demurrer does not have the effect of overruling the demurrer, but only restores the status and leaves the demurrer for future determination. Since the first order in this case was a conditional one and concluded nothing, it would necessarily follow that its subsequent revocation likewise concluded nothing. *Folsom* v. *Howell,* 94 *Ga.* 112 (21 S. E. 136); *Smith* v. *Bugg,* 35 *Ga. App.* 317 (133 S. E. 49); *Kumpe* v. *Hudgins,* 39 *Ga. App.* 788 (149 S. E. 56).

The effect of the court's third and last order on the defendants' demurrer was that the petition set forth a cause of action so far as it sought to recover a sum sufficient to pay the taxes claimed by Campbell county, but that beyond this the plaintiff was not entitled to recover. In the main bill of exceptions, which was brought by the defendants, it is complained that this judgment was erroneous in that it did not sustain the demurrer in whole and dismiss the petition as failing to set forth a cause of action for any amount.

This brings us to an examination of the petition and to the crux of the case.

Considering what the petition alleges with what it fails to allege, and in view also of the plaintiff's own implied interpretation of it, we are of the opinion that it fails altogether to show any right of recovery. The plaintiff must stand upon the ground occupied by his predecessor in office and is bound by his acts; in fact this is not disputed,—he relies upon them. So, in this opinion in using the word "superintendent" we will refer interchangeably either to the present plaintiff or to his predecessor, without attempting to distinguish which of these persons is intended to be designated in a particular instance.

The Bank of Campbell County had executed a deed to secure a debt of $12,500 before the bank went into the hands of the superintendent, the property conveyed being the lot upon which the banking house was situated, and of which the bank was at the time in possession. Whether, if the bank thereafter had any equity of value in this property, the superintendent on taking possession could have dealt with the same in any manner except to "buy in said property or pay off such secured claim," as provided in the act of 1922 (Ga. L. 1922, p. 65), it is clear that the property was treated as having no value above the debt, and that its sale was only for the benefit of the grantee in the security deed. We are not concerned in this case with any question as to whether the sale put into the purchaser the absolute title to the property, although this would seem to be doubtful if the defendants are correct in their contention that the superintendent could have acted only in the manner indicated by the language quoted.

There is some reference in the petition to the Atlanta National Bank, but that bank is not a party, and the allegations are too vague to indicate any interest which it had in the debt secured by the deed to the savings corporation. We therefore think it proper to disregard all reference to the national bank.

In support of our statement that the property was dealt with as having no value above the indebtedness to the savings corporation, we call attention to the allegation that the savings corporation represented to the superintendent that to foreclose the security deed for the recovery of said property in the manner provided by the laws of this State, would be both expensive and attended with delay,

but that under the provisions of section 7 of article 7 of the banking act of 1919 the superintendent "could make application and sell *for them and in their behalf* [italics ours], and so as to enable them to realize upon said real estate, said bank building, and without expense, relieving them of the necessity of paying court costs and sheriff's commissions and the like ;". and that the superintendent, in order to be of assistance to this creditor, did make application to the judge of the superior court and did procure an order to sell the property accordingly. This action appears to have been taken by the superintendent solely in behalf of the savings corporation and for the purpose of saving delay and expense to it. If the property had been worth more than the debt, the superintendent presumably would have acted in behalf of all creditors rather than to serve the interest of the one alone.

Again, the savings corporation would have needed no assistance in avoiding expenses in the nature of "court costs, sheriff's commissions, and the like," unless the property was worth less than the debt with legal costs of collection, since on a sale procured directly by this creditor the proceeds would have been charged with such expenses, as part of the debt.

The petition shows that the application of the superintendent for permission to sell was consented to by the savings corporation with the understanding that "its lien on said property [should be] divested and attached to the fund realized from the proceeds of said sale." To construe the allegations most strongly against the plaintiff, as must be done on demurrer, it is conclusive that in the negotiations between the superintendent and the savings corporation the rights of no other creditors were contemplated, and that the sale was to be made solely in the interest of this creditor. The savings corporation, under the agreement then entered into, was the only person appearing to have any rightful claim to the fund, and by the execution of such agreement it so altered its position that the plaintiff should now be estopped from claiming that the sale was made for any other purpose than that originally understood.

.The purchaser at the sale was the Trust Company of Georgia, and the petition alleges that the suit is brought against that defendant to recover the purchase-price, $12,000, which as shown above was less than the amount of the debt to the savings corporation. The security deed conveyed the title to the property, and the word

"lien" as used in the consent agreement of the savings corporation must be construed in the light of this fact; the intention of the parties manifestly was that the savings corporation would have the same right in the proceeds which it theretofore had in the property, and as between the immediate parties this intention should prevail. *No other creditor is complaining, the superintendent being the sole movant in this proceeding.*

The effect of a security deed is not merely to create a lien but to convey title, subject to redemption by payment of the debt thereby secured. "The debtor himself may redeem, or his creditors may redeem, but until redemption the legal title is out of the debtor and in the creditor." *Groves* v. *Williams,* 69 *Ga.* 614, 616. "The interest which a grantee takes under a deed executed under this law [Civil Code, 1910, § 3306] is not absolute in its broadest sense, but is restricted to holding title as security for the debt. For that purpose it places legal title out of the grantor, but on payment of the debt the right of the grantee to hold it ceases. It is a species of security effective from the date of the instrument when duly recorded, and is enforceable against the property by levy and sale under proceedings elsewhere provided for in the Code (Civil Code, 1910, § 6037). Though of higher dignity, it is similar to a lien, and upon sale of the property in accordance with the statute last mentioned it is transferred from the property to the proceeds of the sale." *Harvard* v. *Davis,* 145 *Ga.* 580, 583 (89 S. E. 740).

The superintendent of banks had no authority to administer the legal title to the property in question except by the consent of the grantee in the security deed, and where such consent was made, its terms should be complied with. *Spradlin* v. *Kramer,* 146 *Ga.* 396 (91 S. E. 409). Since the property when put upon sale brought less than the amount of the debt, the title to the entire proceeds, if vesting at all in the superintendent, was held by him solely for the benefit of the secured creditor, no other claimants appearing.

Since the petition must be construed as showing that the superintendent succeeded to no equity in the property above the debt of the savings corporation; and, since from this and other facts alleged it appears that in making the sale he was acting solely in behalf of this party, he should be treated, if not as its agent, then as a mere nominal payee for it; and, although the action is brought by him in his own name against the purchaser, we think the petition dis-

closes such a state of circumstances as to require averment not only that payment had not been made to the plaintiff, but also that it had not been made to the savings corporation, the person beneficially entitled to receive it. Civil Code (1910), § 3604; *Jowers* v. *Blandy,* 58 *Ga.* 379 (2); *Lowry* v. *McLain,* 75 *Ga.* 372 (2); *Martin* v. *Lamb,* 77 *Ga.* 252 (3 S. E. 10); 22 Am. & Eng. Enc. Law (2d ed.), 528 (11), citing Stilwell *v.* Carpenter, 2 Abbott's New Cases (N. Y.), 238; Irwin *v.* Lapham, 27 Mich. 311; Page *v.* Dickens, 77 Fed. 61. The above authorities will sustain the propositions that payment to a principal will discharge an obligation assumed by another to the agent of such principal, and that where a mere nominal payee is bound on receiving money to pay it over to a third person, the debtor may be relieved by making payment directly to such third person.

Although the sale of the property was made on the first Tuesday in October, 1925, and the deed in pursuance thereof was executed on October 25 of the same year, the petition alleges that this deed was delivered without requiring the payment of the purchase-money, and the entries show that more than two years elapsed before suit was brought for its recovery. Under the applicable rule of strict construction, the allegation "that although said deed recites the consideration having been paid, the same has never been paid," is merely a denial of the truth of such recital, meaning only that the consideration had not been paid to the grantor, and can not be taken as an averment that the consideration had not been paid to the savings corporation. Why was the savings corporation made a party defendant if it was not satisfied? The necessary implication is that the trust company settled with that party, and that afterwards, upon the presentation of another claim, the superintendent felt impelled to undo the settlement. Where the existence or nonexistence of a particular fact is essential to the plaintiff's right of recovery, and where he makes no allegation with reference thereto, the inference is that the truth is against him; so, in this case, it must be assumed that the secured creditor has been settled with, although the payment was not made through the superintendent. *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867).

True, payment is ordinarily a matter to be pleaded by the defendant (*Hobbs* v. *Citizens Bank,* 32 *Ga. App.* 522 (5), 124 S. E. 72); but this rule has no application here, for the reason that the burden

is upon the plaintiff to overcome the presumption arising from the recitals in, and the delivery of, his deed to the trust company, and more especially is this true since he was required by the judge's order to sell for cash. He gives no explanation as to why (if the amount was not paid to the rightful claimant) he virtually extended credit and made no effort to collect the purchase-money for a period of more than two years. It is unreasonable to suppose that either he or the secured creditor would have continued to leave the matter in this shape for such a length of time. In the absence of anything to the contrary, it should rather be inferred that he performed his duty and saw to it that the purchase-money if not paid to himself was otherwise properly accounted for and applied at or before the delivery of his deed in pursuance of the order of sale. *Connolly* v. *Atlantic Contracting Co.,* 120 *Ga.* 213 (2) (47 S. E. 575) ; *Loudermilk* v. *Stephens,* 126 *Ga.* 782 (55 S. E. 956) ; *Ponder* v. *Shumans,* 80 *Ga.* 505 (3) (5 S. E. 502) ; *Scott* v. *McDaniel,* 64 *Ga.* 780 (3).

There are still other reasons which constrain us to this view. The court, in passing the first order upon the defendant's demurrer, held that the petition was fatally defective because it failed to show that there were other claims superior to the claim of the defendants, but allowed the plaintiff the right to amend to meet this supposed defect ; and the plaintiff, by amending in accordance with this ruling, acquiesced in its propriety. In *Lavenden* v. *Haseman,* 157 *Ga.* 275, 279 (121 S. E. 646), the Supreme Court said: "The plaintiffs, by submitting to the ruling that the original petition was defective— and thereby conceding that unless it was amended it ought to be dismissed, and by amending to meet the objections, because refusal to amend would have resulted in dismissal of their case at that time,—instead of excepting thereto by a direct bill of exceptions within the time allowed by law, by election estopped themselves from saying thereafter that the amendment was not necessary. *Rome Railroad Co.* v. *Thompson,* 101 *Ga.* 26 [28 S. E. 429] ; *Glover* v. *S., F. & W. Ry. Co.,* 107 *Ga.* 34 [32 S. E. 876] ; *Hamer* v. *White,* 110 *Ga.* 300 [34 S. E. 1001] ; *Morris* v. *Wofford,* 114 *Ga.* 935 [41 S. E. 56]. The order of the trial judge requiring amendment, to which reference has already been made, does not set out what objections were urged in the argument, but the demurrers to the original petition were general in their nature.

The plaintiffs could have refused to amend and have tested the sufficiency of the petition by direct bill of exceptions. They elected to file the amendment, and thereby conceded that without amendment the petition could not withstand a general demurrer, and that, unless they did amend, their suit ought to be dismissed." The plaintiff here attempted by amendment to show an existing claim in behalf of Campbell County for taxes, and, by submitting to the court's order upon the demurrer and bringing forth this claim, he impliedly assented to the proposition that he would not be entitled to recover except for the purpose of paying this item. This is what we had in mind in referring at the outset to the plaintiff's own implied interpretation of his petition. So, in view of this amendment and the circumstances under which it was made, we conclude that the proper construction which should now be made of the petition is that the plaintiff is proceeding only for the purpose of recovering funds with which to pay the county's claim for taxes, and, if so, there must have been a settlement between the trust company and the savings corporation satisfactory to the latter; otherwise the plaintiff would have declined the leave to amend.

If the plaintiff is entitled to recover of the trust company any part of the purchase-price, why should he not recover it all? If he impliedly limits his claim to a sum sufficient to pay a particular debt, which he deems to be superior, this would seem to be a concession that he is entitled to recover nothing unless for the purpose of paying such debt.

■ Assuming that the petition sufficiently shows a valid debt to the county for taxes, do the facts touching such claim afford legal ground for the action. Unquestionably it is the duty of the superintendent to pay taxes due by a bank whose affairs are in his charge, as well as all other debts of such bank, where he has in hand sufficient funds to pay them, and it is also his duty to reduce the assets of the bank to cash for this purpose. But where a claim has not been brought in until other creditors have been settled with, we do not think that he can maintain a suit to recover back what has gone to another creditor, merely to realize funds with which to pay such claim. Civil Code (1910), § 4317.

It appears that the county's claim for taxes was made the basis of a mandamus absolute against the superintendent, but, aside from other considerations, neither this debt nor the mandamus judg-

ment would afford any ground for the present suit, since it affirmatively appears that the sole issue made in the mandamus proceeding was whether the defendant at that time had in hand sufficient funds with which to pay the taxes, and this issue was decided against the superintendent. The defendants in the instant case were not parties to that proceeding, and in any event are not responsible if the superintendent failed "to apply the funds found to be in his hands toward the extinguishment of that liability. The judgment in the mandamus case was rendered several months before the present suit was filed, and in the absence of further explanation the funds then adjudicated to be in the hands of the superintendent presumably would not include a mere indebtedness by other persons, such as is now alleged and sought to be enforced against these defendants. Even so, the defendants were not parties to the mandamus case and would not be bound by any such adjudication as to their liability. *Godley* v. *Barnes,* 132 *Ga.* 513 (2) (64 S. E. 546) ; *Hinkle* v. *Smith,* 133 *Ga.* 255 (65 S. E. 427) ; *Wardlaw* v. *McNeill,* 106 *Ga.* 29 (31 S. E. 785) ; *Clayton* v. *Palfus,* 36 *Ga.* 321; *Bond* v. *Whitfield,* 32 *Ga.* 215; *Craft* v. *Diamond,* 23 *Ga.* 418 (2) ; *Anderson* v. *Lewis,* 20 *Ga.* 383 ; *Williams* v. *Martin,* 7 *Ga.* 377 ; *Napier* v. *Neal,* 3 *Ga.* 298 (2), 301; *Brown* v. *Chaney,* 1 *Ga.* 410, 412.

A further allegation in the amendment was to the effect that the plaintiff, "aside from the money sued for in his original petition herein, has no assets of the Bank of Campbell County sufficient and available to pay said [mandamus] judgment, nor has he sufficient funds to pay same or the expenses of administration including attorneys' fees in this proceeding." This is not an allegation that the plaintiff had not sufficient funds *at the time* the judgment was rendered. While the savings corporation is made a party defendant in the case before us, the suit was expressly brought against the trust company to recover the amount of its bid at the sale. As between the parties to this case, the last named defendant should not be concerned with any question as to prior claims, whether for taxes or otherwise, nor with expenses of administration or attorney's fees. If it has not paid the amount of the purchase-money, it is liable for it in whole, without reference to these items. If it has paid the money, it has, as to the superintendent, no further obligation to perform.

The allegation just referred to gives additional support to the con-

clusion that the plaintiff is seeking a recovery solely for the benefit of the county; and if this be his only ground of recovery, it fails to show any right whatever as against the defendants. Civil Code (1910), § 5516. Moreover, the county apparently has a complete remedy which it may prosecute in its own behalf against the property in question for the recovery of the taxes claimed by it. The sale of the property by the superintendent did not divest the lien of the State or county for taxes. *Phœnix Mutual Life Ins. Co.* v. *Appling County,* 164 *Ga.* 861 (3) (139 S. E. 674). In such a case the purchaser will take the property subject to be levied upon and sold to satisfy such lien. *Stephens* v. *First National Bank,* 166 *Ga.* 380 (143 S. E. 386).

We concede that ordinarily the superintendent of banks will not be required to show the existence of claims for which he is officially liable, in order to recover upon an obligation due to him as the legal representative of a bank in his charge. The trouble in the instant case is that his suit must be construed as predicating his right to recover only upon his alleged liability for a superior claim, and from all the facts alleged the petition affirmatively discloses that the mere existence of such claim will not justify the action.

To repeat, we think the only reasonable inference to be drawn from the entire petition is that upon a sale of the property there was a settlement between these parties, agreed to or acquiesced in by the superintendent, by which the purchase-money was applied to the payment of the debt to the former, and that it was only because of the later demand for the payment of taxes that the superintendent elected to bring suit. In *Coker* v. *McConnell,* 104 *Ga.* 482 (31 S. E. 411), a sheriff, acting under an execution against administrators, sold realty belonging to their intestate for more than enough to satisfy the execution, and, with the acquiescence and consent of one of the administrators, permitted the purchaser to account for the excess by crediting the amount thereof upon a debt due to him by such administrator individually. The Supreme Court held that a subsequent suit by the sheriff against the purchaser to recover the amount of such excess was not maintainable. In the opinion it was said: "The law holds sheriffs responsible for the proceeds of sales conducted by them, and they are bound to pay over such proceeds to the persons entitled thereto. To this end, these officers have a

clear and undoubted right to demand the cash from all purchasers at these sales. If a sheriff for any reason chooses not to require a purchaser to pay cash, but accepts something else in settlement of the purchase-money and releases the purchaser, he does so at his own peril, so far as any liability over to him on the part of the purchaser is concerned. If he fails to collect purchase-money and thus incurs personal liability, he has no right to relieve himself from the consequences of his own breach of duty by proceeding against the purchaser whom he has discharged." It was further observed that the litigation was a plain action at law, and that the beneficiaries of the estate were not concerned, but that such beneficiaries might protect their rights by appropriate proceedings. So, while in the present case it is our opinion that the superintendent can not recover, we of course adjudicate nothing as respects the rights of the county.

The petition failed to set forth a cause of action and the court erred in not sustaining the general demurrer without qualification.

Admissions in the brief of counsel for the plaintiff can not be considered in determining whether the petition was sufficient to withstand the demurrer; but it may not be amiss to observe that our construction of the petition appears to be in accord with the actual facts, as shown by the following statement in the brief for plaintiff: "The Trust Company of Georgia failed to pay to the superintendent the said purchase-price, electing rather to pay the same to its allied associate, the said savings corporation, who claims to have applied it to its said debt against said defunct bank."

What we have said above as to the effect of the plaintiff's act in amending his petition in response to the original order on the defendant's demurrer was intended to have reference only to the matter of construction, and it is unnecessary to determine whether the presentation of this amendment and the procuring of its allowance would estop the plaintiff from subsequently excepting to the ultimate judgment, which went no further than to apply the same interpretation thus acquiesced in by the plaintiff. See, in this connection, *McConnell* v. *Frank E. Block Co.*, 26 *Ga. App.* 550 (106 S. E. 617); *Smith* v. *Bugg*, 35 *Ga. App.* 317 (2) (133 S. E. 49). Nor do we decide whether a plaintiff can bring a cross-bill of exceptions assigning error, as here, upon a judgment sustaining in part a general demurrer to the petition, where the defendant has

brought a main bill of exceptions assigning error upon the refusal of the court to sustain the demurrer in toto and to dismiss the petition. On this question see *Hammond* v. *Conyers,* 118 *Ga.* 539 (45 S. E. 417); *Funk* v. *Browne,* 145 *Ga.* 828 (6) (90 S. E. 64); *Sheppard* v. *Daniel Miller Co.,* 7 *Ga. App.* 760 (4) (68 S. E. 451); *Woodland* v. *Woodland,* 33 *Ga. App.* 167 (125 S. E. 732); *Stein* v. *Lazarus,* 33 *Ga. App.* 791 (128 S. E. 696).

Seemingly, the plaintiff's exceptions to the judgment overruling his general demurrer to the, defendants' answer are premature as presented at this time in the cross-bill. *Mechanics &c. Bank* v. *Harrison,* 68 *Ga.* 463; *Turner* v. *Camp,* 110 *Ga.* 631 (2) (36 S. E. 76); *Berryman* v. *Haden,* 112 *Ga.* 752 (2) (38 S. E. 53); *Armor* v. *Stubbs,* 150 *Ga.* 520 (104 S. E. 500); *Dean* v. *Turner,* 151 *Ga.* 44 (105 S. E. 602); *Brown* v. *Marbut-Williams Lumber Co.,* 34 *Ga. App.* 348 (2).

But irrespective of any of these questions, since the petition failed to set forth a cause of action and since it must therefore be held on the main bill that the court erred in overruling the general demurrer, it is unnecessary to pass upon any of the exceptions contained in the cross-bill. *Darien Bank* v. *Clarke Lumber Co.,* 112 *Ga.* 947 (2) (38 S. E. 363); *Benton* v. *Singleton,* 114 *Ga.* 548 (4) (40 S. E. 811, 58 L. R. A. 181); *Atlanta Baseball Co.* v. *Lawrence,* 38 *Ga. App.* 497 (3) (144 S. E. 351), and cit. However, as the case is still pending in the court below, and is subject to further proceedings not inconsistent herewith, the dismissal of the cross-bill is without prejudice. *Atlanta Baseball Co.* v. *Lawrence,* supra.

*Judgment reversed on the main bill of exceptions; cross-bill dismissed. Jenkins, P. J., and Stephens, J., concur.*